IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO.    20-cr-00355-WJM

UNITED STATES OF AMERICA,

       Plaintiff,

v.

FARAJI ASWAD ABDALLA,

       Defendant.
_____

**OBJECTIONS AND RESPONSE TO
PRESENTENCE INVESTIGAITON REPORT (DOC. 26)**
_____

Mr. Faraji Abdalla, through his counsel Mary V. Butterton, respectfully submits the following objections and responses to the Presentence Investigation Report (Doc. 26).

### Objections Affecting the Guideline Range Calculation

Paragraph 34: Mr. Abdalla objects to the three criminal history points added under U.S.S.G. § 4A1.1(e). That subsection provides for the addition of one point "for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was treated as a single sentence, up to a total of 3 points for this subsection."

The PSIR writer applied three points under this subsection presumably because in 2005, Mr. Abdalla, then 17, was convicted after jury trial of five total felony counts (one Illegal Discharge of a Firearm, three Felony Menacing, and one Attempted Murder), all stemming from the same incident in which Mr. Abdalla and two friends were seen shooting

at a person's vehicle, with one bullet hitting the car. For three separate reasons, that §4A1.1(e) is incorrectly applied to that conviction.

First, Colorado Felony Menacing is no longer considered to be a "crime of violence" under the guidelines, so Mr. Abdalla's 2005 Felony Menacing counts should not receive points at all under §4A1.1(e). Second, even if the Court considers Felony Menacing to be a crime of violence, the PSIR writer inappropriately applied §4A1.1(e) because these counts all arose out of the same conduct. Finally, the guidelines are silent as to whether 4A1.1(e) can be applied to offenses that occur before the defendant reached the age of eighteen, so this Court should apply the rule of lenity and decline to apply the extra points.

Because §4A1.1(e) does not apply, the correct total number of points for that conviction should be three, not six. Mr. Abdalla's correct criminal history score is nine, resulting in a criminal history category of IV and an advisory guideline range of 57 to 71 months.

A. <u>Colorado Felony Menacing is Not a "Crime of Violence" under the Guidelines</u>[1]

    *a. This Court should apply the categorical approach to determine whether the offense of attempted felony menacing necessarily has as an element the use, attempted use, or threatened use of physical force.*

In order to qualify as a "crime of violence" for purposes of § 2K2.1(a)(2), an offense must satisfy the definition of the term contained in U.S.S.G. § 4B1.2(a). *See* U.S.S.G. § 2K2.1, application note 1. Relevant here, § 4B1.2(a)(1) defines the term "crime of violence" to include "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another."

---

[1] This issue is pending before the 10th Circuit in *United States v. Lozado*, 20-1420 and is set for argument in September 2021.

2

When assessing whether a particular offense qualifies as a "crime of violence" under this provision, this Court applies the categorical approach. *Winder*, 926 F.3d 1251, 1253 (10th Cir. 2019). "That is, [it does] not examine the facts of the prior offense to see whether they fit the guidelines . . . definition," but rather focuses "on the elements of the offense of conviction." *Id.* In this case, that means that Mr. Abdalla's 2005 convictions for felony menacing are "crime(s) of violence" only if, without looking at the facts of the offenses, the statute necessarily "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).

> *b. Colorado felony menacing does not require the threatened use of violent physical force.*

Colorado felony menacing requires proof that the defendant "knowingly," "by any threat or physical action," "placed or attempted to place another person in fear of imminent serious bodily injury," and that he did so "by the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article was a deadly weapon, or by representing verbally or otherwise that he . . . was armed with a deadly weapon." Colo. Jury Instr. Crim. 3-2:30, 3-2:31 (2019); *accord* Colo. Rev. Stat. § 18-3-206(1). Those elements can be satisfied <u>without</u> the use, attempted use, or threatened use of physical force against the person of another.

In order to constitute a threatened use of physical force against the person of another, "conduct must be done purposefully or with conscious wrongdoing"—it is not enough that an action be taken for non-violent purposes such as "whimsy, humor or prank." *United States v. Titties*, 852 F.3d 1247, 1274 (10th Cir. 2017). In *Titties*, the Court applied this principle to conclude that the defendant's prior conviction for feloniously pointing a firearm, in violation of Oklahoma Stat. tit. 21§ 1289.16, could not be considered

3

as an ACCA predicate offense. *Id.* at 1268. It reached that conclusion because the statute could be violated by "willfully . . . point[ing] a [firearm] . . . at any person . . . for the purposes of whimsy, humor or prank." *Id.* at 1270, 1272. Because the Oklahoma statute did not require the defendant's conduct to be "done purposefully or with conscious wrongdoing," *id.* at 1274, this Court held that the defendant's prior conviction did not have "as an element" the "use, attempted use, or threatened use of physical force," *id.* at 1273.

Similar to the Oklahoma statute at issue in *Titties*, a person can violate Colorado's felony menacing statute without acting purposefully or with conscious wrongdoing—conduct that is done for purposes of whimsy, humor or prank will suffice. For example, both the Oklahoma and Colorado statutes could be violated by knowingly pointing a fake firearm at a person as a prank. A defendant could know that such conduct would cause fear in the person—thus violating the Colorado statute—but do so without intending to threaten or cause fear, thus preventing it from being a crime of violence. The Colorado Supreme Court is clear on this issue: a violation of Colorado's felony menacing statute does not require the government to prove a defendant's purpose. Put another way, there is no requirement that a defendant subjectively intend the victim to feel threatened, and the statute allows for prosecution of conduct undertaken in jest. As the Colorado Supreme Court explained:

> [T]he mental culpability element of felony menacing is satisfied when the offender is aware that he is placing or attempting to place another person in fear of imminent serious bodily injury by the use of a deadly weapon, *regardless of whether or not the offender had a conscious objective to cause such fear in the other person.*

4

*People v. Crump*, 769 P.2d 496, 499 (Colo. 1989) (emphasis added). The point is vividly illustrated by the 2020 prosecution of a 10-year-old Colorado Springs boy for "spook[ing] a driver by pointing a toy rifle with an orange tip at the man's truck" while he was "pretending to be a character in the video game 'Fortnite.'"[2] Indeed, the boy's conduct satisfied the elements of the felony menacing statute: It was a "knowing" "physical action" that "placed . . . another person in fear of imminent serious bodily injury," and was committed "by the use of . . . [an] article used or fashioned in a manner to cause a person to reasonably believe that the article was a deadly weapon." Colo. Jury Instr. Crim. 3-2:30, 3-2:31 (2018). The fact that the 10-year-old boy did not intend the victim to feel fear, but was just playing a game, was no defense to the charge of felony menacing.

    *c. The 10th Circuit's prior precedent does not foreclose this argument.*

The 10th Circuit has addressed arguments concerning Colorado felony menacing not being a "crime of violence" or "violent felony" on at least two prior occasions. *See United States v. Herron*, 432 F.3d 1127 (10th Cir. 2005); *United States v. Armijo*, 651 F.3d 1226 (10th Cir. 2011). Neither case forecloses Mr. Abdalla's argument.

To begin with, neither *Herron* nor *Armijo* apply the categorical approach to the same set of elements that is at issue here. That is because the Colorado menacing statute was amended in 2000, and the version of the statute that Mr. Abdalla was prosecuted under in 2005 is materially different from the statute considered in *Herron* and *Armijo*. *See* 2000 Colo. Legis. Serv. Ch. 171 (H.B. 00–1107). In *Herron*, the Tenth Circuit held that Colorado felony menacing required "the threatened use of physical force against the

---

[2] Katie Shepherd, A 10- year-old boy pretending to play 'Fortnite' with a toy gun spooked a driver. Police charged him with a felony, Washington Post (March 3, 2020), available at https://www.washingtonpost.com/nation/2020/03/03/fortnite-toy-gun-arrest/.

5

person of another" for purposes of the elements clause of the Armed Career Criminal Act. *Herron*, however, addressed a prior version of the felony menacing statute, which was limited to offenses "committed by the use of a deadly weapon." 422 F.3d at 1137 (quoting Colo. Rev. Stat. § 18-3-206 (1999)). In contrast, the current version of the felony menacing statute, which was in effect at the time of Mr. Abdalla's 2005 convictions, is not limited to the use of a deadly weapon. Instead, the offense can now be committed by means of "any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon," or through "verbal[]" or other expressive conduct alone. *See* Colo. Rev. Stat. § 18-3-206(1)(a), (b). These additional means render the offense overbroad, especially when considering that the statue (as explained above) does not require the government to prove a defendant purposefully caused fear in the victim.

In *Armijo*, the 10th Circuit concluded that Colorado felony menacing was a "crime of violence" for the purposes of § 4B1.2(a)(1), stating that it was "specifically adopt[ing] the reasoning of *Herron*." *Armijo*, 651 F.3d at 1231. Like *Herron*, however, *Armijo* analyzes a different set of elements, and so is inapplicable here. The analysis in *Armijo* is predicated on an assumption that use of a deadly weapon is an element of the offense. *See id.* at 1230. But use of a deadly weapon is simply one alternative means of accomplishing a broader element, which can also be satisfied by the use of "any article used or fashioned in a manner to cause a person to reasonably believe that the article was a deadly weapon" (like a toy gun) or by representations, "verbal[] or otherwise," that the defendant is armed with a deadly weapon. Colo. Jury Instr. Crim. 3-2:31 (2019); *accord* Colo. Rev. Stat. § 18-3-206(1). And as the Supreme Court's subsequent decision

6

in *Mathis v. United States*, 136 S. Ct. 2243 (2016), makes clear, the categorical approach "disregards the means by which the defendant committed his crime, and looks only to that offense's elements." *Id*. at 2256. Because the felony element of the offense can be accomplished without the threatened use of force—e.g., by pointing a toy gun at another person in the course of a child's game—the offense is overbroad and does not qualify as a crime of violence.

Finally, *Herron* and *Armijo* do not control for another reason. Mr. Abdalla argues that Colorado felony menacing does not require the defendant to intend to threaten or to purposefully cause fear, and that it can be committed for the purpose of whimsy or prank. The defendants in *Herron* and *Armijo* did not raise those arguments, nor did the Tenth Circuit address such arguments. Thus, *Herron* and *Armijo* do not control. And this is especially true after this Court's opinion in *Titties*.

### d. Colorado Menacing is no longer a crime of violence after the Supreme Court's holding <u>Borden v, United States</u>

Colorado felony menacing also does not qualify as a crime of violence because it is a general intent crime. Again, the Colorado Supreme Court's language in *Crump* is relevant here: "[t]he mental culpability element of felony menacing is satisfied when the offender is aware that he is placing or attempting to place another person in fear of imminent serious bodily injury by use of a deadly weapon, *regardless of whether or not the offender had a conscious objective to cause such fear in the other person.*" 769 P.2d 496, 498-99 (Colo. 1989) (emphasis added). To qualify as a crime of violence under the force clause, however, an offense must require the perpetrator "to *direct* his action at, or *target*, another individual." *Borden v. United States*, 141 S. Ct. 1817, 1825 (2021) (emphasis added). Conduct that "is not aimed in that prescribed manner" does not qualify.

7

*Id.* After *Borden*, it is clear that general intent offenses that do not require proof that the defendant intended to target or harm another individual do satisfy the force clause. Indeed, the government has conceded as much in at least one case before the Tenth Circuit. *See* Appellee's Answer Br. at 3-4, *United States v. Gonzalez*, Case No. 21-2022 (10th Cir. July 21, 2021) (conceding that New Mexico aggravated assault no longer qualifies as a violent felony under the force clause of the ACCA because it is a general intent offense that does not require proof that the defendant intended to harm a specific person).

Because Colorado Felony Menacing is not a crime of violence, for all the reasons argued above, §4A1.1(e) does not apply and he should not be awarded points under that subsection.

B. <u>Even if Colorado Felony Menacing is a crime of violence, §41.1(e) does not apply to counts arising out of the same course of conduct.</u>

The PSR writer incorrectly applied U.S.S.G § 4A1.1(e) to this offense because all counts of conviction arose out of the same conduct and incident. A careful reading of the Application Notes to 4A1.1(e) shows that this enhancement is intended for offenses committed on different occasions. Indeed, the example provided in Application Note 5 says this expressly:

> For example, a defendant's criminal history includes two robbery convictions for offenses committed on different occasions. The sentences for these offenses were imposed on the same day and are treated as a single prior sentence. *See* §4A1.2(a)(2). If the defendant received a five-year sentence of imprisonment for one robbery and a four-year sentence of imprisonment for the other robbery (consecutively or concurrently), a total of 3 points is added under §4A1.1(a). An additional point is added under §4A1.1(e) because the second sentence did not result in any additional point(s) (under §4A1.1(a), (b), or (c)). In contrast, if the defendant received a one-year sentence

8

U.S.S.G. §4A1.1 App. N. 5 (2018)(in part). Here, the counts in Mr. Abdalla's prior conviction were all based on *the exact same conduct.* His counts were not based on a same-day crime spree, but rather different ways of charging the exact same action. Using this group of charges to double the criminal history points here is not the same as giving an extra point for a robbery that occurred on a different day but happened to be sentenced at the same day or even a same-day robbery spree; instead, it is applying an enhancement for conduct that is already accounted for in the three-point application of 4A1.1(a).

Because this arises out of the same conduct, and not from different occasions or incidents, this conviction should not get points under §4A1.1(e).

C. Under 4A1.2(d)(1), the conviction should only get three points.

The conviction from Paragraph 34 occurred when Mr. Abdalla was 16 years old, and he was convicted as an adult at 17 years old.  The guidelines, when addressing offenses committed prior to age 18, advise that "[i]f the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under §4A1.1(a) for each sentence." U.S.S.G. §4A1.2(d)(1). Under this rule, three points are appropriately added here; that guideline goes on to address the ways other convictions that occur before age 18 should be treated by the guidelines. In no place within the body of the guideline or the application notes do the guidelines address adding additional points under 4A1.1(e) for defendants who are minors when they commit offenses.

To be clear, as argued above, Mr. Abdalla asserts that 4A1.1(e) doesn't apply to this conviction. But, those arguments aside, because the guidelines are silent as to how these counts should be treated under 4A1.1(e), the Court should apply the rule of lenity and decline to assign the extra three points.

## Corrections not Affecting the Guideline Range Calculation

<u>Paragraph 15:</u> While Mr. Abdalla acknowledges the NIBIN hits on the firearms recovered from his car on April 10 and April 22 respectively, he adamantly refutes any implication that he was involved in any of the incidents where shell casings are recovered.

Paragraph 15 references several NIBIN hits:

A. The firearm recovered on April 10, 2020

    a. *NIBIN hit June 26, 2019*: the PSIR writer leaves out that the cartridge was recovered followed a domestic dispute involving an entirely different person:

> At 1223 hours, Detective Perez conducted a review of DPD case number 2019-397523 which was titled Unlawful Discharge of a Weapon. During the review, Detective Perez learned that on 062519, at approximately 2323 hours, Officers from the Denver Police Department responded to 4251 Ireland Street on a report of a domestic violence in which the male half had discharged one round. Upon arrival, Officers contacted victim Sierra Senter
>
> (061486) who related that she had been engaged in a verbal argument with her husband, Jason Daniels (050785). The victim related that during the argument Daniels had exited the residence and she heard one round being discharged. The victim then looked outside and observed Daniels run around the side of the residence while holding something in his hand. The victim then observed Daniels run south bound from the location and she immediately called police. On scene Officers then searched the area and located one spent 9MM shell casing in the driveway of the address. Officers then searched the area for Jason Daniels (050785) and located him on Himalaya Road just north of 42nd Avenue. Daniels was uncooperative with

10

    b.    *NIBIN hit from a "weapons" violation on April 8, 2020*: Mr. Abdalla denies any knowledge of this incident. Additionally, according to discovery. this alleged hit was not confirmed through lab analysis:

<u>AURORA PD #20-12847 DETAILS</u>:

| | |
|---|---|
| NIBIN Number: | 20U00482 (CC-001A) |
| Property Bureau #: | 189976-1 |
| Offense: | Weapon violation |
| Evidence Type: | 9mm Luger caliber cartridge case |
| Occurrence Date: | 4/8/20 |
| Location: | 1373 N. Kingston St. |
| Assigned Detective: | Unknown |

EVIDENCE UNDER THIS ASSOCIATED INCIDENT HAS *NOT* BEEN CONFIRMED THROUGH MICROSCOPIC COMPARISON. IT IS INCLUDED TO PROVIDE ADDITIONAL INVESTIGATIVE INFORMATION.

B.    The firearm recovered on April 22, 2020

    a.    *NIBIN hit from April 5, 2021*: According to discovery, Mr. Abdalla spoke with police about a shooting he witnessed on April 5, but that statement was not provided to undersigned counsel. To date, undersigned counsel has received no discovery or reports regarding this incident.

    b.    *NIBIN hit from April 21*, 2020: Mr. Abdalla denies being involved with any unlawful discharge on that date. To date, undersigned counsel has received no discovery or reports regarding this incident.

/ / /

In sum: undersigned counsel cannot provide the court with information on these incidents, as that information has not been provided to her. NIBIN hits do not provide any evidence as to the date, time, or identity of a shooter for a given discharge; this is illustrated by a May 9, 2020 NIBIN hit in Adams County for the firearm recovered on April 22, 2020:

> 9. SA Cole noted that an additional NIBIN Hit was documented as a recovered .40 caliber cartridge casing from an Attempted Homicide event from the Adams County Sheriff's Department that took place on May 9, 2020. This event occurred after the firearm had been recovered.

The government nor probation is seeking any enhancement based on these hits, nor has Mr. Abdalla been charged with any of the above incidents, presumably because the information collected is not sufficient to draw conclusions either way. The reality is that people who cannot legally purchase firearms often share them, resulting in a firearm frequently passing between individuals. While Mr. Abdalla was in possession of guns on April 10 and April 22, the evidence provided in discovery can, at most, demonstrate that Mr. Abdalla possessed weapons that may have been discharged at some point, by some person.

Paragraph 34: Mr. Abdalla denies that he fired any shots or eluded police on July 1, 2004. He was arrested at a park in the company of a large group of people, and was cooperative at the time of his arrest. The PSIR writer does not state which Colorado Department of Corrections documents are being relied upon for the assertion included in this paragraph. This is an unproven, unreliable allegation that should not be relied upon at sentencing. See *United States v. Castillo-Torres*, 2021 U.S. App. LEXIS 23823, __ F.4th __ (1st Circuit 2021) (holding that the district court exceeded the scope of its discretion by relying on a bare allegation in a complaint to justify a sentence longer than

otherwise would have been imposed, given that the allegation was both challenged by defendant and unsupported by other indicia of reliability).

<span style="text-decoration: underline;">Paragraph 51</span>: Ms. White and Mr. Abdalla are now married.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


<span style="text-decoration: underline;">s/ Mary V. Butterton</span>
MARY V. BUTTERTON
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Mary_Butterton@fd.org
Attorney for Defendant

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 31, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

      Rajiv Mohan, Assistant United States Attorney
      Email: Rajiv.mohan@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

      Faraji Abdalla (via U.S. Mail)

      s/ Mary V. Butterton
      MARY V. BUTTERTON
      Assistant Federal Public Defender
      633 17th Street, Suite 1000
      Denver, CO  80202
      Telephone:  (303) 294-7002
      FAX:  (303) 294-1192
      Mary_Butterton@fd.org
      Attorney for Defendant