IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00355-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

FARAJI ASWAD ABDALLA,

    Defendant.

## RESPONSE TO VARIANCE MOTION

    The government and defendant Faraji Aswad Abdalla agree on a couple of things: that he "has a gun problem" and that his conduct in his case "seem[s] like flagrant disrespect for the law[.]" Doc. 29 at 1. Contrary to Abdalla's arguments, however, these realities do not justify a downward variance. Instead, the court should impose a sentence at the low end of the guidelines range.

    Abdalla's history with guns is laid out in the presentence report. In 2005, Abdalla was convicted of attempted first-degree murder (among other offenses). While in a stolen car, he fired shots at another vehicle. He was arrested after firing shots in a park and fleeing police. PSR ¶ 34. For that, Abdalla received a lengthy sentence.

    After Abdalla was released, in August 2015, he was arrested and charged with possession of a weapon by a previous offender while on parole. He was convicted of that offense in 2016. PSR ¶ 34, 36. Then in 2018, his parole was revoked because two firearms were found in his home. PSR ¶ 34.

1

Which leads to the undisputed facts of this case. On April 10, 2020, Abdalla was pulled over. In a hidden compartment inside the car, officers found a 9mm pistol, a high-capacity drum magazine, and another extended magazine. The firearm had been reported stolen. Abdalla was arrested and released on bond. PSR ¶ 12. Less than two weeks later, on April 22, 2020, Abdalla was pulled over again. Inside the car, officers found a fully loaded .40 caliber pistol with one in the chamber. PSR ¶ 13.

Abdalla does, as he forthrightly admits, have a gun problem. But that is more aggravating than mitigating. It shows that a lengthy sentence is necessary to deter him. And if meaningful deterrence is not possible, a lengthy sentence is necessary to protect the public from further crimes. Indeed, Abdalla's attempted murder conviction, although now dated, demonstrates what is possible when he possesses firearms.

The risks to the public are further amplified by Abdalla's longstanding involvement with gangs, which dates back many years. More recently, when pulled over on April 10, 2021, Abdalla admitted to being a member of the TreTre Crips. PSR ¶ 11. His time on parole, moreover, was marked by gang activity. As recent as 2018, Abdalla "was still active in the gang lifestyle." PSR ¶ 34. Abdalla suggests that he tried to "separate himself" from gang activity following his release (Doc. 29 at 2), but the undisputed facts in the presentence report say otherwise (*e.g.*, PSR ¶ 34).

In addition, Abdalla's time on supervision has been marked by disregard for the law. As if to illustrate the point, Abdalla was on bond for the April 10 arrest when he possessed a firearm again on April 22. As his parole officer put it, he was "not amenable to supervision." PSR ¶ 34. The presentence report is replete with violations

of parole and bond conditions.

As if by alchemy, Abdalla tries to turn the very fact that his unlawful firearm possession has been so persistent into a form of mitigation.  That, evidently, is because he is motivated by a compulsive fear to protect himself which supposedly mitigates his conduct.  There are several things to say about this argument.  To begin with, Abdalla does not cite, and the presentence report does not reference, any documented mental-health issue to suggest that this putative compulsion is anything akin to drug addiction or anything more than routine disregard for the law.  Abdalla also says that, following his release in 2015, he was merely a target for rival gangs based on his distant reputation and that his fears are rooted in these threats.  But he ignores the undisputed facts in the presentence report that he willingly continued to take part in the gang lifestyle.  While Abdalla has no doubt suffered on account of gun violence, his continued possession of firearms in the face of that experience only raises the threshold to provide adequate deterrence, protection to the public, and so forth.  He, more than most, should know the consequences of actions such as his.   More than all of this, however, is the legal reality that neither fear, nor a desire to protect one's family, nor any of the other rationalizations Abdalla offers provides any justification to possess a firearm when you are a convicted felon.  That could not have been lost on Abdalla given his history.

The government agrees that Abdalla's tough upbringing counts in his favor.  But that can only go so far, and in the government's view only goes so far as a sentence at the low end of the guidelines range.

3

Dated:  September 15, 2021

Respectfully submitted,

MATTHEW T. KIRSCH
Acting United States Attorney

By:  s/ *Rajiv Mohan*
Rajiv Mohan
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:  Rajiv.Mohan@usdoj.gov

Attorneys for Government

4

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 15, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case:

Mary Butterton                        Mary_Butterton@fd.org

By: s/ *Rajiv Mohan*
Rajiv Mohan
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax: 303-454-0406
E-mail: Rajiv.Mohan@usdoj.gov